1545

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal No. 21-510 |
| v. | ) | [UNDER SEAL] |
| | ) | |
| ALEXANDER LEFTEROV | ) | 18 U.S.C. § 371 |
| a/k/a Aleksandr Lefterov | ) | 18 U.S.C. §§ 1030(a)(5)(A) and (c)(4)(B)(i) |
| a/k/a Alexandr Lefterov | ) | 18 U.S.C. §§ 1030(a)(2)(C) and (c)(2)(B)(i) |
| a/k/a Alipako | ) | 18 U.S.C. § 1028A(a)(1) |
| a/k/a Uptime | ) | 18 U.S.C. § 1349 |
| a/k/a Alipatime | ) | 18 U.S.C. § 2 |

INDICTMENT

FILED

DEC 28 2021

CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

The grand jury charges:

Introduction and General Allegations

At all times relevant and material to this Indictment:

1. Defendant ALEXANDER LEFTEROV is a citizen of Moldova and last resided in Chisinau, Moldova.

2. LEFTEROV used multiple online aliases, including "Alipako," "Uptime," and "Alipatime."

3. From in and around March 2021, and continuing thereafter to in and around November 2021, LEFTEROV operated, controlled, maintained, and leased to others a botnet comprised of thousands of infected computers known as "bots." The infected computers were located throughout the United States and elsewhere, including in the Western District of Pennsylvania. From the infected computers, LEFTEROV stole victims' credentials (*i.e.*, usernames/logins and passwords) to their online accounts, to include accounts at financial institutions, payment processors, and retail establishments. To monetize the botnet, LEFTEROV

1

provided others with access to the infected computers and to the victims' stolen credentials in furtherance of a scheme to defraud. The scheme to defraud involved using the stolen credentials to gain unauthorized access to victims' online accounts by fraudulently posing as the legitimate account holder in an effort to obtain money, property, and other items of value. As the owner/operator of the botnet, LEFTEROV received a percentage-share of any profits derived from scheme.

## Relevant Terms

4.  Malicious software ("malware") is a software program designed to disrupt computer operations, gather sensitive information, gain access to a computer, or do other unwanted actions on a computer.

5.  A "botnet" is a network of computers infected with malicious software that allows a third party to control the entire computer network without the knowledge or consent of the computer owners. Each of the infected computers within the botnet is referred to as a "bot."

6.  A "server" is a type of computer or device on a network that manages network resources and provides services to other computers connected to it via a network or the Internet. The computers that use the server's services are sometimes called "clients." Servers can be physically located anywhere with a network connection that can be reached by the clients. For example, it is not uncommon for a server to be located hundreds, or even thousands, of miles away from client computers.

7.  "Hidden Virtual Network Computing" or "HVNC" is a feature that allows access to a computer with or without the knowledge of the computer's user. In the criminal context discussed herein, HVNC enables remote access to infected computers without the knowledge of the victim.

8. An "Internet Protocol address" or "IP address" is a unique numeric address used to identify computers on the Internet. The standard format for IP addressing consists of four numbers between 0 and 255 separated by dots, *e.g.*, 149.101.10.40. Every computer connected to the Internet (or group of computers using the same account to access the Internet) must be assigned an IP address so that Internet traffic, sent from and directed to that computer, is directed properly from its source to its destination. Internet Service Providers (ISPs) assign IP addresses to their customers' computers.

## COUNT ONE
(Conspiracy to Commit Computer Fraud)

The grand jury further charges:

9. Paragraphs 1 through 8 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

10. From in and around March 2021, and continuing thereafter to in and around November 2021, in the Western District of Pennsylvania and elsewhere, the defendant, ALEXANDER LEFTEROV, did knowingly and intentionally conspire and agree with persons unknown to the grand jury (collectively, the "co-conspirators") to commit offenses against the United States, that is:

   a. to knowingly cause the transmission of a program, information, code, and command, and, as a result of such conduct, intentionally cause damage, and attempt to cause damage, without authorization, to a protected computer, and the offense caused and would, if completed, have caused: (i) loss to one or more persons during a one-year period and loss from a related course of conduct affecting one or more protected computers, aggregating at least $5,000 in value; and (ii) damage affecting 10 or more protected computers during a one-year period, in violation of Title 18, United States Code, Sections 1030(a)(5)(A), (c)(4)(A)(i)(I), (c)(4)(A)(i)(VI), and (c)(4)(B)(i); and,

   b. to intentionally access a protected computer used in interstate and foreign commerce without authorization, and thereby obtain information from a protected computer, and to commit the offense for purposes of private financial gain, in violation of Title 18, United States Code, Sections 1030(a)(2)(C) and (c)(2)(B)(i).

### Object of the Conspiracy

11. The object of the conspiracy was for LEFTEROV and his co-conspirators to profit from their operation, control, maintenance, and leasing of a botnet comprised of thousands of infected computers.

4

Manner and Means of the Conspiracy

12. It was part of the conspiracy that LEFTEROV and his co-conspirators operated, controlled, maintained, and leased to others a botnet comprised of thousands of infected computers known as "bots."

13. It was further part of the conspiracy that LEFTEROV and his co-conspirators operated, controlled, and maintained the botnet through command-and-control servers.

14. It was further part of the conspiracy that LEFTEROV's co-conspirators included "coders" who used their technical expertise to, among other things, run various codes and commands to maintain and update the botnet.

15. It was further part of the conspiracy that LEFTEROV and his co-conspirators stole victims' credentials (*i.e.*, usernames/logins and passwords) to online accounts, to include accounts at financial institutions, payment processors, and retail establishments, and other personal information and means of identification, from infected computers within the botnet.

16. It was further part of the conspiracy that LEFTEROV and his co-conspirators used an online dashboard or panel to monitor the infected computers, access victims' stolen credentials (*i.e.*, usernames/logins and passwords) and other means of identification and access the infected computers.

17. It was further part of the conspiracy that, to monetize the botnet, LEFTEROV and his co-conspirators provided others with access to the infected computers and to the victims' stolen credentials for use in a scheme to defraud. The scheme to defraud involved using the stolen credentials to gain unauthorized access to victims' online accounts by fraudulently posing as the legitimate account holder in an effort to obtain money, property, and other items of value.

18. It was further part of the conspiracy that LEFTEROV and his co-conspirators caused the transmission of a command that directed infected computers within the botnet to report or "call back" to a hidden virtual network computing ("HVNC") server whose IP address is known to the grand jury.

19. It was further part of the conspiracy that infected computers within the botnet could be accessed directly from the HVNC server, whose IP address is known to the grand jury, via the dashboard without the knowledge of the computer owners. Direct access to the infected computers via the HVNC server provided LEFTEROV and his co-conspirators the ability to launch the connection to the victims' online accounts directly from the infected computer's browser—which the victims' online accounts would recognize as a trusted connection.

20. It was further part of the conspiracy that LEFTEROV and his co-conspirators provided others with access to the botnet to distribute malware, including ransomware, to infected computers within the botnet.

21. It was further part of the conspiracy that LEFTEROV and his co-conspirators did not seek, nor were they given, permission to infect and control victims' computers, steal information from victims' computers, and use the victims' computers as part of the botnet.

22. It was further part of the conspiracy that LEFTEROV and his co-conspirators enriched themselves by receiving a percentage of any profits derived from the scheme.

Overt Acts

23. In furtherance of the conspiracy, and to achieve the objective of the conspiracy, LEFTEROV and his co-conspirators committed and caused to be committed the following overt acts, *inter alia*, in the Western District of Pennsylvania and elsewhere:

    a. On or about September 29, 2021, LEFTEROV and his co-conspirators provided User 1 with access to the botnet.

b. On or about September 30, 2021, LEFTEROV and his co-conspirators provided User 2 with access to the botnet.

c. On or about October 1, 2021, LEFTEROV and his co-conspirators provided User 3 with access to the botnet.

d. On or about October 1, 2021, LEFTEROV and his co-conspirators maintained unauthorized access to the computer of A.M. and illegally possessed the credentials (*i.e.*, usernames/logins and passwords) to A.M.'s online accounts, to include accounts at financial institutions, payment processors, and retail establishments.

e. On or about October 1, LEFTEROV and his co-conspirators maintained unauthorized access to the computer of K.M. and illegally possessed the credentials (*i.e.*, usernames/logins and passwords) to K.M.'s online accounts, to include accounts at financial institutions, payment processors, and retail establishments.

f. On or about October 6, 2021, LEFTEROV and his co-conspirators provided User 4 with access to the botnet.

g. On or about October 7, 2021, LEFTEROV and his co-conspirators provided User 5 with access to the botnet.

h. On or about October 18, 2021, LEFTEROV and his co-conspirators worked on a technical solution to maintain the botnet when the infected computers operating systems were upgraded from Windows 10 to Windows 11.

i. On or about November 3, 2021, LEFTEROV and his co-conspirators maintained unauthorized access to the computer of E.J. and illegally possessed the credentials (*i.e.*, usernames/logins and passwords) to E.J.'s online accounts, to include accounts at financial institutions, payment processors, and retail establishments.

In violation of Title 18, United States Code, Section 371.

## COUNT TWO
(Intentional Damage to a Protected Computer)

The grand jury further charges:

24. Paragraphs 1 through 8 and 10 through 23 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

25. From on or about October 1, 2021, and continuing thereafter to in and around November 2021, in the Western District of Pennsylvania and elsewhere, the defendant, ALEXANDER LEFTEROV, knowingly caused the transmission of a program, information, code, and command, to wit, a command directing infected computers in the botnet to report and "call back" to an HVNC server whose IP address is known to the grand jury, and knowingly aided and abetted others in doing the same and in attempting to do the same, and, as a result of such conduct, intentionally caused damage without authorization to a protected computer, including protected computers in the Western District of Pennsylvania belonging to A.M. and K.M., and the offense caused (i) loss to one or more persons during any one-year period from LEFTEROV's course of conduct affecting one or more other protected computers aggregating at least $5,000 in value; and (ii) damage affecting ten or more protected computers during any one-year period.

In violation of Title 18, United States Code, Sections 1030(a)(5)(A), (c)(4)(B)(i), and 2.

## COUNTS THREE THROUGH FIVE
(Unauthorized Access of a Protected Computer to Obtain Information for Private Financial Gain)

The grand jury further charges:

26. Paragraphs 1 through 8 and 10 through 23 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

27. On or about October 1, 2021, in the Western District of Pennsylvania and elsewhere, the defendant, ALEXANDER LEFTEROV, intentionally accessed a protected computer used in interstate and foreign commerce without authorization, and thereby obtained information from a protected computer, and knowingly aided and abetted others in doing the same and in attempting to do the same, and committed the offense for purposes of private financial gain; that is, the defendant accessed one or more protected computers without authorization and obtained credentials (*i.e.*, usernames/logins and passwords) to online accounts, to include accounts at financial institutions, payment processors, and retail establishments, and other personal information and means of identification, of the persons identified by initials below whose identities are known to the grand jury, each being a separate count herein below:

| Count: | Person (identified by initials) |
|---|---|
| 3 | A.M. |
| 4 | K.M. |
| 5 | E.J. |

In violation of Title 18, United States Code, Sections 1030(a)(2(C) and (c)(2)(B)(i), and 2.

9

## COUNTS SIX THROUGH EIGHT
(Aggravated Identity Theft)

The grand jury further charges:

28. Paragraphs 1 through 8 and 10 through 23 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

29. On or about October 1, 2021, in the Western District of Pennsylvania and elsewhere, the defendant, ALEXANDER LEFTEROV, knowingly transferred and possessed, without lawful authority, and knowingly aided and abetted others in doing the same and in attempting to do the same, a means of identification of another person, to wit, the credentials (*i.e.*, usernames/logins and passwords) to online accounts, to include accounts at financial institutions, payment processors, and retail establishments, of the persons identified by initials below whose identities are known to the grand jury, during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A, to wit, the violation of 18 U.S.C. § 1030(a)(2)(C) charged in Counts Three through Five of this Indictment, knowing that the means of identification belonged to another actual person, each such transfer and possession being a separate count herein below:

| Count: | Person (identified by initials) |
|---|---|
| 6 | A.M. |
| 7 | E.J. |
| 8 | K.M. |

In violation of Title 18, United States Code, Sections 1028A(a)(1) and 2.

## COUNT NINE
(Conspiracy to Commit Wire Fraud)

The grand jury further charges:

30. Paragraphs 1 through 8 and 10 through 23 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

31. From in and around March 2021, and continuing thereafter to in and around November 2021, in the Western District of Pennsylvania and elsewhere, the defendant, ALEXANDER LEFTEROV, knowingly and willfully did conspire, combine, and agree with other persons unknown to the grand jury to commit wire fraud, by knowingly and with intent to defraud devising and intending to devise a scheme and artifice to defraud, and for obtaining money and property, by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing and attempting to execute this scheme and artifice, knowingly transmit and cause to be transmitted in interstate and foreign commerce, by means of wire communication, certain signs, signals, and sounds as further described herein, in violation of Title 18, United States Code, Section 1343.

In violation of Title 18, United States Code, Section 1349.

## FORFEITURE ALLEGATIONS

The grand jury further charges:

1. The allegations contained in Counts One through Five of this Indictment are repeated, re-alleged, and incorporated by reference as if fully set forth herein.

2. Upon conviction of one or more of the computer fraud offenses charged in Counts One through Five of this Indictment, the defendant, ALEXANDER LEFTEROV, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 1030(i), all right, title, and interest, in the following:

   a. any personal property that was used or intended to be used to commit or to facilitate the commission of the offenses charged in Counts One through Five of this Indictment; and,

   b. any property, real or personal, constituting or derived from, any proceeds obtained, directly or indirectly, as a result of the offenses charged in Counts One through Five of this Indictment; and

3. If through any acts or omission by the defendant, ALEXANDER LEFTEROV, any or all of the property described in paragraphs 2 and 3 immediately above:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property of the Defendant up to the value of the above-described forfeitable property, pursuant to Title 21, United States

12

Code, Section 853(p), as incorporated by Title 18, United States Code, Sections 982(b) and 1030(i), and Title 28, United States Code, Section 2461(c).

A True Bill,

*[signature]*

FOREPERSON

*[signature]*
CINDY K. CHUNG
United States Attorney
PA ID No. 317227